TRUSTEES OF THE AFRICAN METHODIST EPISCOPAL
CHURCH, *etc.*, v. D. H. HEWITT.

37  107
42  756

1. TAX DEED, *Void; Quitclaim Deed; Merger of Title.* Where one was in possession and claimed to own real estate under a void tax deed, but later procured a quitclaim deed from the rightful owner of said real estate, the interest he had in the land by virtue of such tax deed was merged in the stronger and superior title he obtained by such quitclaim deed. He then held such real estate subject to all tax liens that would have been valid if the rightful owner had never parted with his title.

2. GRANTEE *in Second Quitclaim Deed; No Title, When.* Where A., an owner of real estate, executed a quitclaim deed therefor, and a grantee of A.'s grantee took possession of the property, and while in the possession thereof A. executed another quitclaim deed for the property to another person, who had no knowledge of the existence of the first quitclaim deed, and the last quitclaim deed was recorded first, *held,* that the grantee under the last quitclaim deed obtained no valid claim or title to the real estate.

### *Error from Bourbon District Court.*

EJECTMENT, brought by *Hewitt* against the *Trustees of the African Methodist Episcopal Church,* to recover a certain lot in the city of Fort Scott. Trial by the court, at the September Term, 1885, and judgment for defendants, awarding them the lot, subject, however, to plaintiff's lien for taxes by him paid thereon. The defendants bring the case here. The opinion states the facts.

*J. D. McCleverty,* for plaintiffs in error.

*Bawden & Coon,* for defendant in error.

Opinion by HOLT, C.: This is an action of ejectment to recover lot 1, block 131, in the city of Fort Scott. The petition contains the usual averments, and the answer is a general denial. The case was tried by the court without a jury, and judgment entered for defendants, awarding them the lot, subject to the lien for taxes paid by plaintiff, amounting to $226.31. Defendants bring the case here.

The only error complained of was in making the sum of $226.31 a lien on the lot. The court found that plaintiff below, defendant in error, claimed ownership under two deeds, a tax deed dated and recorded October 27, 1884, executed upon a sale of the lot, made September 16, 1875, for the taxes due for 1874; that at that sale the county purchased the lot, and assigned the certificate to plaintiff in April, 1884; that the treasurer charged twenty-five cents per lot for advertising the tax sale of 1874, while the actual cost was only twelve and one-half cents per lot; that plaintiff also had a quitclaim deed from R. C. Anderson, the original owner, dated March 18, 1884, and filed for record on the 24th of the same month at 2 o'clock P. M.; that plaintiff was entitled to $226.31 redemption-money, and that it was a lien on the lot.

The defendants below, plaintiffs in error, claim under a warranty deed from James Hart, dated September 13, 1880. Hart claimed under two deeds, a tax deed dated September 10, 1877, for the taxes for the year 1876, and also under a quitclaim deed from R. C. Anderson, the original owner, dated May 11, 1883, and filed for record March 24, 1884, at 3 o'clock P. M. At the time of the tax sale of 1877, the lot had been sold to Bourbon county for the taxes of 1874. Both tax deeds are good upon their face, and Hart and his grantees had been in actual possession of the lot and paid the taxes thereon since the recording of his tax deed September 13, 1880. The title to the property down to Anderson was good.

The question urgently presented in the briefs as to the effect of the priority of registration of the quitclaim deeds, may be answered by simply stating that the defendants and their grantor took their quitclaim deeds from Anderson, who was also the grantor of plaintiff. The deed to Hart was under date of May 11, 1883; to Hewitt, of March 18, 1884. The deed from Anderson to Hewitt of March 18, 1884, conveyed nothing more than what he actually owned at that time. (*Utley v. Fee*, 33 Kas. 683.) He had before that time conveyed his entire interest to Hart. Therefore the plaintiff took nothing as against him by his quitclaim deed.

The tax deed under which the plaintiff claimed was executed in 1884, based upon the sale to Bourbon county in 1875, for the taxes of 1874. For that sale the treasurer charged twenty-five cents per lot for advertising the delinquent tax sale, while the actual cost was only half the amount. Such a deed was void. (*Board of Regents v. Linscott*, 30 Kas. 241.)

The defendants claimed title under a tax deed from the tax sale of 1877 for the taxes of 1876. In 1875 the land had been bought in by Bourbon county at a tax sale for the taxes of 1874, and when it was offered for sale in 1877 for the taxes of 1876, the land had neither been redeemed nor sold, nor the tax-sale certificate assigned; therefore that tax sale was void. (Comp. Laws of 1879, ch. 107, §122; *Belz v. Bird*, 31 Kas. 139.) A tax deed was issued to Hart, the grantor of defendant, September, 1880, and he immediately took possession under his tax deed.

It is contended in this action, that because Hart had been in possession and had had his tax deed recorded more than two years before the commencement of this action, he held the lot, divested of all tax liens for taxes levied before the date of the tax sale of 1877. Now while the tax deed of Hart, after the two years had expired, would probably have been valid against everybody except Anderson, it would have been voidable as to him. Hart secured from Anderson, in 1883, his interest in the lot. Now this quitclaim deed was a better and a stronger title than the tax deed held by Hart, and, under the well-known rule of law, the weaker and inferior title was merged in the stronger and superior title, and he took the lot, under such quitclaim deed, subject to all liens that would have been upon it while owned by Anderson. If Anderson had not parted with his title to any person until this action had been brought, the taxes under Hewitt's tax deed would have been a lien upon the lot; and the defendants, claiming under Hart, the grantee of Anderson, have the same rights and are under the same liabilities, so far as this tax lien on the lot is concerned, as Anderson himself would have been had he not given a deed for the lot. The taxes

for 1874 would have been then a lien upon the lot, under §142, chapter 107, Compiled Laws of 1879. For that purpose it would be immaterial whether the tax deed was based upon a valid or void tax sale.

It is recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.